**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**CHARLES E. ALEXANDER/RYAHIM, JR.**           **PETITIONER**

**VS.**           **CASE NO. 5:07CV00222 JLH/HDY**

**LARRY NORRIS, Director of the**
**Arkansas Department of Correction**           **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## DISPOSITION

Now before the Court is the application for writ of habeas corpus pursuant to 28 U.S.C. §2254 of Charles E. Alexander/Ryahim, Jr., an inmate in the custody of the Arkansas Department of Correction (ADC).   In August of 1997, Mr. Ryahim was convicted of first-degree murder following a jury trial in the Circuit Court of Pulaski County.   He was sentenced to a term of life imprisonment.   On direct appeal, Mr. Ryahim claimed the trial court erred in allowing the testimony of Sharika Hubbard, a witness for the state.   The Arkansas Supreme Court affirmed the conviction. *Alexander v. State*, 335 Ark. 131 (1998).   In January of 1999, the petitioner sought postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure.   The trial court denied relief in January of 2000, and this ruling was affirmed by the Arkansas Supreme Court on November 8, 2001.  *Alexander v. State*, CR 00-453 (Ark. Nov. 8, 2001) (*per curiam*).  *See Respondent's Exhibit 6 to Docket entry no. 9.*

In March of 2004, the petitioner filed a civil rights action in this Court against an ADC employee.  *Ryahim v. Manus*, 5:04CV00106.  Mr. Ryahim alleged that he was transferred to the ADC's Varner Supermax Unit in September of 2000.  He arrived at the Varner Supermax Unit with portions of his trial and postconviction transcripts, according to Ryahim.  He alleges that he sought copies of these transcripts and that the defendant failed to copy and return the transcript in time for Mr. Ryahim to file a timely federal habeas corpus petition.  Specifically, Mr. Ryahim alleges that he needed to file his federal petition by November 8, 2002, but that the defendant failed to return the

transcripts to him, making "it impossible for plaintiff to file a timely Habeas Corpus by his November 8, 2002, court deadline." Docket entry no. 2, page 6, 5:04CV00106. This civil rights case is still pending, with a jury trial set for April of 2008.

In September of 2004, Mr. Ryahim filed a state court petition for habeas corpus with the Circuit Court of Lincoln County. This court denied relief on October 13, 2004, and this denial was upheld on appeal to the Arkansas Supreme Court. *Alexander/Ryahim v. Norris*, 04-1303 (Ark. June 23, 2005) (*per curiam*). *See Respondent's Exhibit 11 to Docket entry no. 9.* In June of 2006 the petitioner sought habeas corpus relief via a petition with the trial court. In this petition, Mr. Ryahim argued that he was entitled to additional scientific testing under Act 1780 of the 2001 Acts of Arkansas. On September 12, 2007, the trial court denied relief. The Arkansas Supreme Court affirmed the lower court. *Alexander/Ryahim v. State*, CR 06-1484 (Ark. March 22, 2007) (*per curiam*). *See Respondent's Exhibit 14 to Docket entry no. 9.*

In his current petition, Mr. Ryahim advances the following claims for relief:

1.   He is actually innocent and there was a conspiracy to cover up the incident;

2.   He was entitled to State Crime Lab testing because identity was an issue at trial;

3.   He was entitled to State Crime Lab testing based on evidence secured in relation to the crime;

4.   He was entitled to State Crime Lab testing based on newly discovered scientific evidence in which testing was not available at the time of the trial;

5.   He was entitled to State Crime Lab testing based on recanted testimony of all State witnesses;

6.   He was entitled to State Crime Lab testing because the scientific predicate claim could not have been previously discovered through the exercise of due diligence;

7.   He is entitled to relief based on newly discovered exculpatory evidence the prosecutor withheld prior to and during trial;

8.   He is entitled to relief based on recanted testimony of all State witnesses;

9.   The prosecutor coerced witness Shakira Hubbard;

10.   He was denied a fair and impartial jury;

3

11.     The police tampered with crime scene evidence;

12.     The prosecutor used perjured testimony from all State witnesses to secure the conviction;

13.     The trial court erred in refusing to remove juror Suzanne Godwin;

14.     The conviction is not supported by sufficient evidence;

15.     The prosecutor used fabricated exhibits at trial;

16.     The trial court lacked subject matter jurisdiction;

17.     The judgment and commitment order is void;

18.     The prosecutor used perjured testimony from witnesses Shakira Hubbard, James Fairchild, and Mickey Holloway;

19.     He received ineffective assistance of counsel regarding investigation of witness and suspects;

20.     His trial attorney had a conflict of interest;

21.     Fraudulent practices at trial;

22.     Conspiracy and Civil RICO violations;

23.     He is entitled to immediate civil and criminal actions; and

24.     Malicious prosecution.

Respondent contends that the statute of limitations bars consideration of this petition. By previous Order of the Court, the petitioner was notified that dismissal due to untimeliness was possible and the petitioner was invited to explain why such a dismissal should not occur. The petitioner has responded, submitting various explanatory pleadings. In addition to the explicit arguments advanced by the petitioner, we liberally construe his pleadings and consider some arguments that are impliedly advanced. We will first address whether the petition is time barred.

Section 101 of 28 U.S.C. 2244 (as amended) imposes a one year period of limitation on petitions for writ of habeas corpus:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

        (A) the date on which the judgment became final by the conclusion of direct

4

review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Respondent notes that the appellate court's opinion on petitioner's Rule 37 appeal was dated November 8, 2001. The respondent contends that the petitioner should have filed his federal habeas corpus petition on or before November 7, 2002. The respondent notes that the petitioner had no collateral proceedings pending in the year commencing on November 8, 2001. The respondent also notes that the petitioner later sought relief under Act 1780 of 2001. This petition, filed in 2006, does not afford any relief to the petitioner as the time for filing his federal petition had elapsed, according to the respondent.

**Analysis of Limitations Arguments and Explanations:** Mr. Ryahim concedes that his federal habeas corpus petition was not timely filed. He also concedes the petition should have been filed by November 7, 2002. However, Mr. Ryahim advances several reasons why the Court should nonetheless address the merits of his habeas corpus petition. These reasons are primarily outlined in docket entries nos. 16 and 20, but he also offers arguments in some of his other numerous pleadings. Our inquiry is whether any of these reasons asserted by Mr. Ryahim are sufficient to toll the one-year time period. In *Calderon v. United States District Court for Central District of California*, 112 F.3d 386 (9th Cir. 1997), the Ninth Circuit Court of Appeals held that the limitation period may be equitably tolled if "extraordinary circumstances" beyond a prisoner's control render it impossible for him to file a timely petition. *Id*. at 391.

5

*The limitations period should be tolled until September 5, 2006:*  Mr. Ryahim first alleges that the limitation period should be tolled because he did not know of certain information until September 5, 2006, when Judge Susan Webber Wright issued an Order in case no. 4:06CV00845. A review of Judge Wright's Order shows that Mr. Ryahim named thirty-five individual defendants in the civil rights case, including a judge, prosecuting attorneys, detectives, lawyers, patrol officers, jury members, and a former Pulaski County Circuit Clerk.  Mr. Ryahim alleged a conspiracy that resulted in his illegal incarceration for a crime that he did not commit.  The conspiracy began on December 23, 1996, when he was accused of theft by receiving and continued at least through his trial in August of 1997 when he was convicted of murdering Mark Brown, according to the complaint.  Judge Wright dismissed the civil rights complaint, finding that the heart of the complaint was an attack on petitioner's incarceration.  Citing *Heck v. Humphrey*, 512 U.S. 477 (1994), Judge Wright noted that dismissal was proper because no claim for damages lies unless the conviction were first reversed by the issuance of a federal writ of habeas corpus.  The complaint was dismissed without prejudice to refile after a successful federal habeas corpus challenge.

There is no merit in the assertion that the limitations period should be tolled until September 5, 2006.  The Order of Judge Wright dated September 5 provides no facts or law that affects the running of the limitation period.  The facts recited in the order were simply a summary of the facts alleged in the complaint authored by Mr. Ryahim.  The law cited by Judge Wright was well-settled precedent.  There was no dispute at that time that *Heck v. Humphrey, supra*, governed the facts. There is no persuasive argument that the ruling of Judge Wright on September 5, 2006, represented a pivotal moment with regard to the limitations period in the habeas corpus action.

*The limitations period should be tolled because the grounds for relief could not have been discovered with reasonable diligence where the newly discovered evidence shows justification for the delay in filing the habeas petition.*  The petitioner contends a large conspiracy, involving "trial attorney, appeal attorney(s), habeas attorney, prosecuting attorney, police, juror, and judicial misconduct" resulted in the framing of Mr. Ryahim for the murder of Mark Brown.  He alleges he

6

was framed because of his race and for an alleged threat he made against a white female police officer. (Docket entry no. 16, page 3). This "chain conspiracy," according to Mr. Ryahim, is an external force beyond his control which prevented him from filing a timely habeas petition. As such, he urges that he is entitled to equitable tolling because he has "fully herein explained the cause of the (5) year delay in that our RICO claim is an continuing influence of an ongoing organization interfering with the procedural due process of these criminal proceedings. . ." (Docket entry no. 16, page 6). The flaw in this argument is the petitioner confuses allegations with proven facts. Although he *alleges* a widespread conspiracy, he can not prove one[1]. There is simply no plausible evidence supporting such a conspiracy. Even assuming such evidence exists, the petitioner does not suggest a causal connection between the conspiracy and his inability to file a timely habeas corpus petition. In other words, he does not show how the conspiracy specifically operated to stop him from filing a petition on or before November 8, 2002. Mr. Ryahim acknowledges that he was aware of the filing deadline and offers general assertions of a grand conspiracy that kept him from filing the petition. Lacking is an explicit act from any of the alleged conspirators that is tied to the petitioner's ability to file the timely petition. We find no merit in the allegations that the limitation period should be tolled due to the existence of a conspiracy to frame Mr. Ryahim.

     *The limitations period should be tolled due to the findings made by Judge Jerry W. Cavaneau in case no. 5:04CV00106*[2]. Mr. Ryahim filed a civil rights case in 2004, naming Randal Manus, an ADC employee, as the defendant. In a Proposed Findings and Recommended Partial Disposition dated January 27, 2005, United States Magistrate Judge Jerry W. Cavaneau recommended that the

---

[1]Mr. Ryahim does offer the June 30, 2005, affidavit of Vincent Williams to support the conspiracy claim. Mr. Williams states that he was at the scene of the murder and observed the police alter the evidence and Williams "knew they was gone frame Alexander for the murder. . . when I heard the detective named Ray tell Det. Knowles we'll just say Alexander was the shooter since David robbed him of his car, and we can call it a night by using mistaken identity as our motive." Williams alleges that a Marcus Johnson was the killer of Mark Brown, and that the crime was gang-related. Rule 37 proceedings transcript, volume 2, pages 53-57.

[2]It is difficult at times to discern the petitioner's arguments. Liberally construing the pleadings, we address the claim that Judge Cavaneau's opinion should have tolled the limitation period.

defendant's motion to dismiss the civil rights complaint be denied.  This recommendation was adopted, and the case is still pending and set for trial in April of 2008.  Judge Cavaneau recited the allegations of Mr. Ryahim in the case, which are summarized as follows: on July 3, 2002, Ryahim requested that copies of his criminal case be made so that he could file his federal habeas corpus petition.  The legal materials were delivered to ADC employee Randal Manus.  On July 12, 2002, Ryahim wrote an emergency grievance to Mr. Manus, stressing the need for the case file to prepare the habeas corpus petition due before November 8, 2002.  A portion of the file was returned to Ryahim on July 15, but the Rule 37 transcript and brief were not returned.  It appears that the missing portion of the file was not returned to Mr. Ryahim.  It is certain that the missing portion was not returned prior to the November 8, 2002, deadline, and it may be that the missing portion of the file was never returned to the petitioner.  For the purpose of this case, we will assume the missing portion was not returned to Mr. Ryahim.  As a result of the incident with the legal documents, Mr. Ryahim sued Mr. Manus, seeking compensatory and punitive damages, as well as a declaratory judgment allowing Mr. Ryahim to file a belated federal habeas corpus petition.

We will address in due time the argument that the absence of the transcript prevented the petitioner from filing a timely habeas petition.  For now, the issue is whether the findings of Judge Cavaneau on January 27, 2005, represented some momentous occasion tolling the limitation period.  We find no reason the opinion of Judge Cavaneau would have the effect of tolling the running of the time.  As with the Order issued by United States District Judge Susan Webber Wright, there are no facts or law contained in the opinion that are relevant to the limitation period.  In both cases, the petitioner initiated the lawsuits and the opinions simply summarize the facts alleged by the petitioner.  Thus, he cannot claim surprise at the assertions summarized in the orders.  In addition, the law cited in the orders of both Judges is well-settled, and provides no basis for a finding that the petitioner is entitled to tolling of the limitation period.  Finally, with regard to Judge Cavaneau's January 27, 2005 opinion, even if the limitation period were tolled until this opinion, the petition for writ of habeas corpus is still untimely, as it was filed in August of 2007, about eighteen months later.

8

There is no merit to this assertion.

*The limitations period should be tolled until July 21, 2006.* Mr. Ryahim identifies July 21, 2006, as the date of a prior court decision in case no. 4:06CV00845, and he claims the limitation period should be tolled until this date because this marked the discovery of the "chain conspiracy . . . and fraudulent concealments." A review of the docket sheet in the case shows that July 21, 2006, was the date that Mr. Ryahim filed his complaint against the thirty-five defendants. The petitioner fails to show this date to be of significance or discovery with respect to the limitations period. To the contrary, the filing of the complaint on this date suggests that the plaintiff knew of the allegations in advance of this date. There is no merit in tolling the limitations period prior to July 21, 2006, based upon the filing of the complaint in the civil rights case.

*The limitations period should be tolled because the petitioner did not have access to transcripts.* This assertion is implied in some of the pleadings in this case, and in his pending civil rights case the petitioner explicitly argues that his lack of access to the transcripts prevented him from filing a timely habeas corpus petition. In the civil rights case, Mr. Ryahim alleges that he arrived at the ADC's Varner Supermax Unit on September 18, 2000, bringing with him trial transcripts and other legal documents. In July of 2002, he requested that copies be made, noting the impending November 2002 deadline for filing his habeas corpus petition. When he did not receive the copies, the lawsuit against Mr. Manus ensued. As previously stated, we will assume that the ADC did not return any copies to Mr. Ryahim[3].

Other courts have considered the effect of lack of access to a transcript upon a petitioner's ability to initiate habeas corpus petitions. In *Lloyd v. Van Natta*, 296 F.3d 630 (7th Cir. 2002), the petitioner alleged he was unable to file a timely petition due to the absence of a transcript, and he further alleged that the limitations period should be tolled as a result of the missing transcript:

. . . [A]n exception to the general statute of limitations of § 2244(d)(1)(A) is

---

[3]An exhibit attached to the complaint in the civil rights case shows that the transcript was reordered by the petitioner on December 3, 2002. It is not clear when he received the transcript.

contained in § 2244(d)(1)(B), which permits a prisoner to file a habeas corpus petition within one year from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Mr. Lloyd appears to argue that the state's failure to provide him with a complete trial transcript impeded his ability to file his habeas corpus petition, and that the statute of limitations therefore should not begin to run until he receives the transcripts. According to Mr. Lloyd, he was unable to present his strongest argument to the court-that the prosecution engaged in misconduct during closing arguments-because he has yet to obtain a transcript of the opening and closing arguments of his trial.

The state's failure to provide Mr. Lloyd with a transcript did not prevent him from filing his habeas corpus petition, and the time limit contained in § 2244(d)(1)(B) does not apply to this case. Although neither § 2244 nor this circuit has defined what constitutes an "impediment" for purposes of § 2244(d)(1)(B), the plain language of the statute makes clear that whatever constitutes an impediment must *prevent* a prisoner from filing his petition. Even though Mr. Lloyd apparently has not yet received the transcripts he sought, he was able to raise the issue of prosecutorial misconduct in his federal habeas corpus petition. Although mere notice pleading is not sufficient in the habeas corpus context, *see Blackledge v. Allison,* 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), there is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief. Rather, Rule 2(c) of the Rules Governing § 2254 Cases provides that a petitioner need only "set forth in summary form the facts supporting each of the grounds" specified in the petition. *See Donovan v. Maine,* 276 F.3d 87, 93 (1st Cir.2002) (habeas corpus petition need not be pleaded with particularity, so citation to transcript unnecessary); *Ruark v. Gunter,* 958 F.2d 318, 319 (10th Cir.1992) (prisoner not entitled to transcript before filing § 2254 petition). Here, Mr. Lloyd was able to provide sufficient factual support for his claims without possessing the complete transcript-he alleged in his petition that the prosecution's improper reference that he "beat [his girlfriend's child] to death," R. 1, ¶ 12c, when he was not charged with murder constituted prosecutorial misconduct. If Mr. Lloyd desired the complete trial transcript to aid the court in deciding his petition, he could have sought the district court's help in obtaining the missing portions through discovery after he filed his petition. *See Gassler v. Bruton,* 255 F.3d 492, 495 (8th Cir.2001); Rule 6, Rules Governing § 2254 Cases. Because Mr. Lloyd was able to file his petition without a complete copy of his trial transcript, the state's failure to provide a complete transcript did not prevent Mr. Lloyd from pursuing any of his claims, and § 2244(d)(1)(B) does not apply to this case.

## C. Equitable Tolling

Mr. Lloyd also argues that equitable tolling should be applied to excuse the delay in filing his petition. Although we have not yet "conclusively determined whether, or to what extent, the one-year deadline in § 2244(d)(1) is actually subject to the doctrine of equitable tolling," *Johnson v. McCaughtry,* 265 F.3d 559, 565 (7th Cir.2001), *cert. denied,* 535 U.S. 937, 122 S.Ct. 1318, 152 L.Ed.2d 226 (2002), it is clear that the state's alleged refusal here to provide Mr. Lloyd with a complete transcript does not justify equitable tolling.

For equitable tolling to excuse an untimely filing, a prisoner must demonstrate that he "could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *Id.* Here, Mr. Lloyd was present at his trial and knew the basis on which he could have asserted prosecutorial misconduct; under these circumstances, a petitioner does not need a transcript to proceed with filing a habeas corpus petition. *See Montgomery v. Meloy,* 90 F.3d 1200, 1203-04 (7th Cir.1996); *see also McCleskey v. Zant,* 499 U.S. 467, 500, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (unavailability of document, the contents of which petitioner had at least constructive knowledge, did not prevent him from raising claim in his habeas petition); *Donovan,* 276 F.3d at 93 (petitioner who attended evidentiary hearing did not need transcript to file habeas petition). While we have not yet specifically addressed whether lack of a transcript would support equitable tolling, the other circuits to consider this issue have held that the unavailability of a transcript does not allow equitable tolling to excuse an otherwise untimely petition. *See Donovan,* 276 F.3d at 93 (delay in obtaining transcript no basis for equitable tolling of one-year limitation period); *Gassler,* 255 F.3d at 495 (same); *Jihad v. Hvass,* 267 F.3d 803, 806 (8th Cir.2001) (lack of access to transcript does not preclude petitioner from commencing habeas corpus proceedings and does not warrant equitable tolling); *Osborne v. Boone,* No. 99-7015, 1999 WL 203523, at 2 (10th Cir.1999) (unpublished order) (same, on denial of CA). We find these cases persuasive, and we join our sister circuits in holding that equitable tolling does not excuse Mr. Lloyd's late filing simply because he was unable to obtain a complete trial transcript before he filed his § 2254 petition.

*Lloyd v. Van Natta,* 296 F.3d at 632 -634 (7th Cir. 2002).  *See, also, Miller v. Weber*, 2007WL2903946 (D. S. D., September 28, 2007), where the Court summarized this Circuit's view regarding equitable tolling:

Finally, the Eighth Circuit has noted generally that equitable tolling affords the otherwise time-barred prisoner an "exceedingly narrow window of relief." *Jihad v. Hvass,* 267 F.3d at 805. In *Jihad,* the following were rejected as "extraordinary circumstances" which the Petitioner claimed entitled him to equitable tolling: an unsuccessful search for postconviction counsel; no access to his trial transcript, and unsuccessful attempts to obtain advice from state and federal officials about how to commence his habeas claim. Instead of "extraordinary circumstances" the court characterized these as the kinds of obstacles faced by most habeas petitioners, which Congress presumably considered when it enacted the one-year limitations period. *Id.* at 806-07.

*Miller v. Weber*, 2007 WL 2903946, p. 7 (D.S.D.,2007).

Mr. Ryahim is not entitled to equitable tolling due to the absence of his transcript beginning on July 3, 2002, and continuing through November 8, 2002, the date on which a timely

petition should have been filed.  First, unlike other cases involving transcripts, Mr. Ryahim
actually possessed the transcripts for a period of time -- from September 18, 2000, until July 3,
2002.  This period of time included almost eight months of the twelve months during which the
limitations period was running.  Thus, he was either aware or should have been aware of the
information in the transcripts.  Second, even if he had not possessed the transcripts, the above
cited cases make clear that the absence of the transcripts does not warrant equitable tolling.
Finally, Mr. Ryahim does not point to a particular portion of the transcript as pivotal in
formulating particular claims for relief.  His general assertion that the missing transcript
prevented him from filing the habeas petition fails.

*The limitations period should be tolled because the petitioner is actually innocent.*  In the
context of habeas corpus proceedings, the United States Supreme Court notes that a claim of
actual innocence must be supported by "new reliable evidence--whether it be exculpatory
scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not
presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Even if we were to assume a valid
claim of actual innocence, such a claim does not toll the statute of limitations absent a showing
of actual innocence coupled with "some action or inaction on the part of the respondent that
prevented him [the petitioner] from discovering the relevant facts in a timely fashion, or, at the
very least, that a reasonably diligent petitioner could not have discovered these facts in time to
file a petition within the period of limitations."  *Flanders v. Graves*, 299 F.3d 974, 978 (8th Cir.
2002), *cert. Denied*, 537 U.S. 1236 (2003).

Mr. Ryahim does not make the requisite showing.  To the contrary, the pertinent facts
regarding his claim of innocence have long been apparent and available to Mr. Ryahim.  At his
August 1997 trial, Mr. Ryahim, through the testimony of three primary defense witnesses
(Miranda Stivers, Becky Howton, and Andre Alexander), presented an alibi defense.  Three
eyewitnesses for the state (LaQuita Butler, Shakira Hubbard, and Perry Holloway) identified

12

Ryahim as the shooter of Mark Brown.  A fourth prosecution witness, James Fairchild, witnessed the killing but did not see the shooter's face and, accordingly, did not identify Ryahim.  In Rule 37 proceedings in 1999, state's witness LaQuita Butler backed away from her positive identification of Ryahim, stating "it's possible" the he was not the shooter.  (Vol. 1, Rule 37 Transcript, page 99).  Similarly, Perry Holloway testified that he made a mistake in identifying Ryahim as the shooter.  (Vol. 1, Rule 37 Transcript, page 211).  The third eyewitness for the state at the original trial, Shakira Hubbard, did not testify in the Rule 37 proceedings, although Mr. Ryahim attached an affidavit of Hubbard, dated October 25, 2000[4], recanting her testimony, to a pleading filed in a state court proceeding on June 9, 2006.  (Vol. 2, Rule 37 Transcript, pages 9-48, 74-75).  Thus, when the one year time period for filing a federal habeas petition began on November 8, 2001, Mr. Ryahim was in possession of his trial transcript and Rule 37 transcript, and knew of the evidence which convicted him and the subsequent changes in the testimony of witnesses Butler and Holloway (and may have been aware of the October 2000 affidavit of Hubbard).  It is curious and unusual for witnesses to back away from their trial testimony.  It is also curious why the petitioner, aware of the November 2002 deadline, chose not to file a federal habeas corpus petition until August of 2007.  The petitioner does not show that some act or omission of the respondent prevented him from filing a timely petition.  Further, he does not show that he was diligent but unable to discover the facts supporting his claim of innocence.  As a result, his claim of innocence does not operate to toll the limitations period.

In conclusion, the reasons offered by Mr. Ryahim do not warrant the equitable tolling of the limitation period.  Absent this tolling, the period for filing a timely petition expired long before Mr. Ryahim initiated this action, and we recommend the petition be denied due to its untimeliness, and the relief requested be denied.

IT IS SO ORDERED this   12    day of December, 2007.

---

[4]Shakira Hubbard's affidavit is dated October 25, 2000, and appears to be notarized, although the poor copy makes it difficult to determine when and by whom it was witnessed.

_____
UNITED STATES MAGISTRATE JUDGE